1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Laney Sweet,

            Plaintiff,

v.

Philip Mitchell Brailsford, et al.,

            Defendants.

No. CV-19-05831-PHX-MTL

**ORDER**

       Before the Court is the Sweet Plaintiffs' Motion to Withdraw the Reference to Adversary Proceeding to Allow Claims to Proceed in District Court Case No. CV-17-00152-PHX-GMS (Doc. 2).[1] Plaintiffs argue that the reference to a bankruptcy court adversarial proceeding should be withdrawn, such that a district court case pending before Chief Judge Snow can first be "fully adjudicated and liquidated."[2] (*Id.* at 2.) Defendants argue that withdrawal of the reference is not needed to achieve that result. (Doc. 4 at 2.) The motion is denied.

## I.     BACKGROUND

       This matter arises from a tragic incident on January 18, 2016, in which City of Mesa Police Officer Philip Brailsford killed civilian Daniel Shaver in a hotel hallway. Mr. Shaver

---

[1] Oral argument was previously scheduled for March 23, 2020 (Doc. 13) but was subsequently vacated. (Doc. 14.) Upon full consideration of the pending motion, relevant authorities, and related documents, the Court believes that oral argument would not significantly aid the decisional process. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearing); LRCiv 7.2(f) (same).

[2] Unless otherwise noted, any references to the "bankruptcy court" are to the U.S. Bankruptcy Court for the District of Arizona; any references to the "district court" are to the U.S. District Court for the District of Arizona.

1    had surrendered to Mesa Police, yet Brailsford inexplicably shot him five times. Mr. Shaver

2    died from his wounds. (Doc. 2 at 3.)

3            On January 17, 2017, Mr. Shaver's widow, Laney Sweet, and her two minor

4    children, N.S. and E.S., (collectively, "Plaintiffs") filed a district court case against Officer

5    Brailsford, his wife, Corrine Brailsford (collectively, "Defendants" or the "Brailsfords"),

6    five other current and former Mesa Police Department Officers, and the City of Mesa.[3] The

7    suit alleges constitutional violations under 42 U.S.C. § 1983 and wrongful death under

8    Arizona law. The case is currently pending in the district court before Chief Judge Snow

9    as Case No. CV-17-00152-PHX-GMS (the "District Court Case"). It was consolidated with

10   another case brought by Mr. Shaver's parents, Norma and Grady Shaver.[4]

11           On January 24, 2019, while the District Court Case was pending, the Brailsfords

12   filed for Chapter 7 relief in bankruptcy court. *See* Case No. 2:19-bk-00802-BKM (the

13   "Bankruptcy Case"). On May 6, 2019, Bankruptcy Judge Brenda K. Martin issued a

14   discharge order pursuant to 11 U.S.C. § 727. (*See* Bankruptcy Case Doc. 21.) While the

15   order granted Chapter 7 relief to the Brailsfords, it did "not stop creditors from collecting

16   from anyone else who is also liable on the debt, such as an insurance company or a person

17   who cosigned or guaranteed a loan." (*Id*. at 2.)

18           As a result of the discharge order, the district court claims against the Brailsfords

19   were automatically stayed. Plaintiffs continue to pursue those discharged claims "for the

20   limited purpose of establishing liability needed to collect from any insurance

21   policy/indemnification agreements that may cover the debtors' conduct." (Doc. 2 at 4.) The

22   other defendants also moved to stay the entire District Court Case in light of the discharge

23   order. (Dist. Ct. Case Doc. 284 at 2.) Chief Judge Snow declined, noting that "[b]ecause

24   the bankruptcy court has not entered a stay as to the other defendants, the Court will decline

25   to do so here pursuant to § 362" and the Court's inherent authority. (*Id*. at 2-3.) As such,

26   this case remains pending.

27   ────────────────
     [3] The individual officers are Charles J. Langley, Brian Elmore, Christopher Doane, Bryan
28   Cochran, and Richard Gomez. Two other defendants, La Quinta Holdings Incorporated and
     LQ Management LLC, were previously terminated from the action. (Docs. 53, 339.)
     [4] That case, pre-consolidation, was Case No. CV-17-00715-PHX-GMS.

Following the discharge order, on April 26, 2019, Plaintiffs filed an adversary proceeding in bankruptcy court against the Brailsfords. Case No. 2:19-ap-00171-BKM (the "Adversary Proceeding"). The Adversary Complaint alleges one claim: nondischargeability pursuant to 11 U.S.C. § 523(a)(6). ((Adversary Proceeding Doc. 1 ("Adv. Compl.") at 16-18.) That statute provides that "a discharge … does not discharge an individual debtor from any debt … for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Adversary Complaint claims that Officer Brailsford's "willful and malicious actions" justify an order "declaring any liabilities and future debt(s) owed for judgment entered against Debtor Brailsford … as non-dischargeable, particularly pursuant to 11 U.S.C. § 523(a)(6)." (*Id.* ¶ 66.) *See* Fed. R. Bankr. P. 7001(6) ("The following are adversary proceedings: … a proceeding to determine the dischargeability of a debt.").

Plaintiffs filed the pending motion on December 13, 2019.[5] (Doc. 2.) It moves to withdraw the reference to the Adversary Proceeding. Plaintiffs argue that withdrawal will permit Plaintiffs' "pre-existing federal and state constitutional and state law tort claims against the Debtor Defendants to be fully adjudicated and liquidated" in the District Court Case. (*Id.* at 2.) Once the District Court Case has been adjudicated, Plaintiffs state that "then the Bankruptcy Court is an appropriate forum to resolve the bankruptcy issue of dischargeability of any debts established though the District Court adjudication." (*Id.* at 6.) Plaintiffs do not dispute that the bankruptcy court maintains jurisdiction over the dischargeability issue "once the liability and damages aspects" of their district court claims are fully adjudicated. (*Id.*) They argue that that withdrawal is mandatory pursuant to 28 U.S.C. §§ 157(b)(5) and 157(d) or, alternatively, that the Court should exercise its

---

[5] The motion states that Plaintiffs filed the motion in bankruptcy court, "though they recognize the Clerk shall transmit the Motion to the Clerk of the U.S. District Court for the District of Arizona for resolution by Judge Snow in the Case No. CV-17-00152-PHX-GMS." (Doc. 2 at 1 n.1.) However, pursuant to LRCiv 3.7(c), "The Clerk of the Court must randomly assign bankruptcy appeals and motions to withdraw the reference to a District Judge unless a matter arising out of the same or administratively consolidated bankruptcy case has been previously filed with the Court, in which case the matter must be assigned to the District Judge who presided over the related matter." Because the District Court Case did not "arise out of" and has not been consolidated with the pending bankruptcy matters, this motion was randomly assigned to the undersigned District Judge.

discretion to withdraw the reference under § 157(d). (*Id.*)

Defendants filed a response on December 23, 2019. (Doc. 4.) They agree that the "tort claims should be adjudicated in the district court" and the "dischargeability issues should be adjudicated in the bankruptcy court." (*Id*. at 2.) Where the parties differ, however, is that Defendants argue that withdrawal of the reference is not necessary to achieve this outcome. Instead, they state that the "best way to achieve the result sought by the Sweet Plaintiffs is to deny the Motion, leave the Adversary Proceeding in bankruptcy court," and "allow Judge Snow to adjudicate the Tort Claims." (*Id*. at 7.) Plaintiffs filed a reply on January 17, 2020. (Doc. 10.)

In a December 18, 2019 minute order, Bankruptcy Judge Martin stayed the Adversary Proceeding, stating, "the court will stay matters until Judge Liburdi's ruling on the motion to withdraw reference." (Adv. Proc. Doc. 30 at 2.) A written order followed on January 3, 2020, stating that the parties "shall promptly notify this Court of any such rulings." (Doc. 32 at 2.)

## II.    LEGAL STANDARD

A district court may refer cases arising under or related to the Bankruptcy Code (U.S.C. Title 11) "to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The District of Arizona accordingly refers all bankruptcy cases to the U.S. Bankruptcy Court for the District of Arizona. *See* General Order 01–15 (June 29, 2001). A litigant who desires that a referred case proceed before the district court may move to "withdraw the reference" from the bankruptcy court. Withdrawal of the reference is governed by 28 U.S.C. § 157(d), which states:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion, or on timely motion of any party for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The "first sentence of 28 U.S.C. § 157(d) provides a district court with permissive authority to withdraw the reference of a bankruptcy court"; the second sentence provides for mandatory withdrawal. *Hupp v. Educ. Credit Mgmt. Corp.*, No. 07CV1232WQH(NLS), 2007 WL 2703151, at \*2 (S.D. Cal. Sept. 13, 2007). Under either circumstance, the "burden of persuasion is on the party seeking withdrawal." *FTC v. First Alliance Mortgage Co. (In re First Alliance Mortgage Co.)*, 282 B.R. 894, 902 (C.D. Cal. 2001).

## III.   ANALYSIS

### A.   Timeliness

A party must "timely" move to withdraw the reference from a bankruptcy proceeding. 28 U.S.C. § 157(d). Timeliness is the "threshold question" in evaluating such a motion. *In re GTS 900 F, LLC*, No. 2:09-BK-35127-VZ, 2010 WL 4878839, at \*2 (C.D. Cal. Nov. 23, 2010) (citation omitted). In the Ninth Circuit, "a motion to withdraw is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding." *Security Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1007 n.3 (9th Cir. 1997) (citation omitted). "In essence, the courts have established a requirement that the motion to withdraw the reference be made at the first reasonable opportunity as evaluated within the specific factual context presented." *Stratton v. Vita Bella Grp. Homes, Inc*., No. CVF07-0584 LJO, 2007 WL 1531860, at \*2 (E.D. Cal. May 25, 2007) (citation omitted).

Courts have found untimeliness in delays of a month or more. *See, e.g., In re Mahlmann*, 149 B.R. 866, 870 (N.D. Ill. 1993) (a one-month delay made the motion to withdraw reference untimely because the moving party was aware of the basis for withdrawal at the time of initiating an adversary action); *Budsberg v. Spice*, No. 17-5681-RJB, 2017 WL 3895701, at \*2 (W.D. Wash. Sept. 6, 2017) ("Defendant Spice's motion to withdraw the reference was not timely filed. His motion was filed six months after this adversarial case was filed."); *Laine v. Gross*, 128 B.R. 588, 589 (D. Me. 1991) (a motion to withdraw the reference was untimely when filed six months after the alleged necessity

for withdrawal became apparent); *In re Grace Miles*, 2010 WL 3719174, at *2 (N.D. Cal. Sept. 17, 2010) (denying motion to withdraw reference because movant "was well aware of each of the purported grounds for the withdrawal well before she [untimely] filed ..."); *Connolly v. Bidermann Industries U.S.A., Inc.*, No. 05-1791, 1996 WL 325575, *3 (S.D.N.Y. 1996) (an eight-month delay rendered a motion to withdraw the reference untimely).

The briefing before the Court does not address the issue of timeliness. The Court finds, however, that the motion is untimely. Plaintiffs did not move to withdraw the reference at their "first reasonable opportunity." *Stratton*, 2007 WL 1531860, at *2. They filed the District Court Case on January 17, 2017, and the Adversary Proceeding on April 26, 2019. Plaintiffs then filed the pending motion more than seven months later, on December 13, 2019. (Doc. 2.) As the same plaintiffs in the District Court Case, the Adversary Proceeding, and the pending motion, Plaintiffs were aware or should have been aware of their grounds for withdrawing the reference when they filed the Adversary Proceeding. Plaintiffs have "made no showing, nor is any apparent from the record, that changed circumstances justify [their] belated motion to withdraw." *In re Grace Miles*, WL 3719174, at *2. Accordingly, the Court will not withdraw the reference pursuant to 28 U.S.C. § 157(d).

### B.    Mandatory Withdrawal

Even if the motion was timely, Plaintiffs have not met their burden to show that mandatory withdrawal is warranted in this case. As noted, withdrawal is mandatory if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d); *Security Farms,* 124 F.3d at 1008 (9th Cir. 1997). In the Ninth Circuit, mandatory withdrawal hinges "on the presence of substantial and material questions of federal law." *See id*. at 1008 n. 4. Mandatory withdrawal therefore requires more than "simple application" of non-bankruptcy federal law. *Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc*., 355 B.R. 214, 222 (D. Haw. 2006) (*citing City of New York v. Exxon Corp*., 932

F.2d 1020, 1026 (2nd Cir. 1991)). The mandatory withdrawal provision "should be construed narrowly so as to avoid creating an 'escape hatch' by which bankruptcy matters could easily be removed to the district court." *One Longhorn Land I, L.P. v. Presley*, 529 B.R. 755, 760 (C.D. Cal. 2015) (citing *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 952 (7th Cir. 1996)).

Plaintiffs argue that withdrawal is mandatory because 28 U.S.C. § 157(b)(5) states that the "district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose." (Doc. 2 at 7.) This argument is not persuasive. The only claim in the Adversary Proceeding is for a nondischargeability determination pursuant to 11 U.S.C. § 523(a)(6). (Adv. Compl. at 16-17.) Indeed, a review of the Adversary Proceeding demonstrates that Judge Martin has previously indicated that "this Court does not have jurisdiction to hear the personal injury aspect" of Plaintiffs' claims. (Adv. Proc. Doc. 20 at 2.) Further, bankruptcy courts have "exclusive jurisdiction over nondischargeability actions brought pursuant to 11 U.S.C. § 523(a)(2), (4), (6) and (15)." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 904 (9th Cir. 2001). The Ninth Circuit has also referred to dischargeability actions as involving "a prototypical bankruptcy context." *In re Deitz*, 760 F.3d 1038, 1043 (9th Cir. 2014). The only claim before the bankruptcy court is subject to its exclusive jurisdiction. Plaintiffs' argument therefore does not support mandatory withdrawal.

This case is readily distinguishable from *Estate of Horner v. Bailor*, No. 18-CV-00103-VKD, 2019 WL 1299046, (N.D. Cal. Mar. 21, 2019), cited by Plaintiffs. That case did not involve a motion to withdraw the reference. Rather, the driver in a fatal automobile accident filed for Title 7 bankruptcy protection; the decedent's mother subsequently filed an adversary proceeding, pro se, in bankruptcy court for wrongful death. *Id*. at *1-2. The bankruptcy court noted that administration of the adversary proceeding "will require proceedings before the bankruptcy and district court because although the bankruptcy court possessed jurisdiction over the question of dischargeability, the liquidation of a wrongful

1   death claim is a non-core matter that should be tried in district court[.]" *Id.* at *2. In the

2   present case, a wrongful death claim is already pending in the District Court Case. *Estate*

3   *of Horner* does not support Plaintiffs' motion to withdraw the reference.

4   Plaintiffs also argue that 28 U.S.C. § 157(d) mandates withdrawal because this case

5   requires consideration of "complex civil rights issues raised by a police shooting case under

6   42 U.S.C. § 1983." (Doc. 2 at 8.) This is not a convincing argument, either. The § 1983

7   claims are before the district court—where they will remain, regardless of the outcome of

8   the present motion. This case is, accordingly, distinct from another case cited by Plaintiffs,

9   *Walton v. AG Credit, ACA (In re Walton)*, 158 B.R. 939, 942 (Bankr. N.D. Ohio 1993).

10  (Doc. 2 at 8.) In that case, the bankruptcy court sua sponte withdrew the reference in an

11  adversarial proceeding alleging Equal Protection and Due Process violations. *Id.* at 940.

12  Again, claims of that nature are not before the bankruptcy court.

13  Plaintiffs finally argue that withdrawal is mandatory because they "demand and

14  have preserved their rights to a jury trial" on claims for personal injury "under appropriate

15  federal and state law theories." (Doc. 2 at 6-7.) It is true that "where a jury trial is required

16  and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to

17  district court is appropriate." *In re Cinematronics, Inc.,* 916 F.2d 1444, 1451 (9th Cir.

18  1990). But Plaintiffs have not established that a jury trial is "required" in the Adversary

19  Proceeding. *Id.* The Ninth Circuit has held that "[b]ankruptcy litigants ... have no Seventh

20  Amendment right to a jury trial in dischargeability proceedings," because such proceedings

21  are equitable in nature. *In re Hashemi*, 104 F.3d 1122, 1124 (9th Cir. 1996). Accordingly,

22  this factor does not support mandatory withdrawal. *See One Longhorn Land I, L.P.*, 529

23  B.R. at 765 ("The flaw in [plaintiff's] argument is that the adversary complaint raises core

24  nondischargeability claims, and [plaintiff] has not established that a jury trial is

25  'required.'").[6]

26  Because Plaintiffs have failed to identify any novel issues of federal non-bankruptcy

27
28  [6] Further, even if a jury trial were required in the Adversary Proceeding, "numerous courts requiring withdrawal of reference at trial conclude that reference need not be withdrawn in the pretrial stage." *In re Baptist Found. of Arizona*, No. CIV 00-557-PHX-ROS, 2000 WL 35575676, at *10 (D. Ariz. June 30, 2000).

1  law in the Adversary Proceeding, mandatory withdrawal is not required.

2          **C.    Permissive Withdrawal**

3          Plaintiffs have also not met their burden to demonstrate that the Court should grant

4  permissive withdrawal of the reference. Permissive withdrawal requires a showing of

5  cause. 28 U.S.C. § 157(d). It is appropriate only "in a limited number of circumstances."

6  *Hawaiian Airlines*, 355 B.R. at 223.

7                  **1.    Core or Non-Core**

8          In determining whether cause for permissive withdrawal exists, "a district court

9  should first evaluate whether the claim is core or non-core, since it is upon this issue that

10 questions of efficiency and uniformity will turn." *One Longhorn Land I, L.P.*, 529 B.R. at

11 755 (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)). A "core

12 proceeding" is a matter in which the bankruptcy court "may enter appropriate orders and

13 judgments." 28 U.S.C. § 157(b)(1). A "non-core proceeding," however, is a matter in

14 which the bankruptcy court may "only submit proposed findings of fact and conclusions

15 of law to the district court." 28 U.S.C. § 157(c)(1); *see also Security Farms*, 124 F.3d at

16 1008. If the claim is a core claim, "efficiency generally weighs against withdrawing the

17 reference." *Facebook, Inc. v. Vachani*, 577 B.R. 838 (N.D. Cal. 2017); *see also In re

18 N'Genuity Enterprises Co.*, No. CV-12-0351-PHX-JAT, 2012 WL 3095002, at *3 (D.

19 Ariz. July 30, 2012) ("[B]ecause this case involves core proceedings, the interests of

20 efficiency and uniformity strongly counsel against withdrawal of the reference.").

21         Plaintiffs argue that their claims "involve a non-core proceeding[.]" (Doc. 2 at 10.)

22 They state that "personal injury tort or wrongful death claims" are specifically exempted

23 from the list of core proceedings in 28 U.S.C. 157(b)(2). Because personal injury and

24 wrongful death claims are at the "heart" of the Adversary Proceeding, Plaintiffs argue that

25 cause exists for permissive withdrawal. (*Id.* at 11.) Despite Plaintiffs' assertions about the

26 "heart" of the Adversary Proceeding, the only claim pending in that matter is a

27 nondischargeability claim pursuant to 11 U.S.C. § 523(a)(6). (Adv. Compl. at 16-17.) The

28 Adversary Complaint itself states that "[t]his is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(I). To the extent that any allegations are deemed to relate to non-core proceedings, said allegations fall within the purview of 28 U.S.C. § 157(b)(4)." (Adv. Compl. at 2.)   Further, 28 U.S.C. § 157(b)(2)(I) states, "Core proceedings include … determinations as to the dischargeability of particular debts."

This case is analogous to *Facebook, Inc. v. Vachani*, in which plaintiff Facebook Inc. moved to withdraw the reference in a bankruptcy court adversary proceeding involving a nondischargeability claim. 577 B.R. 838 (N.D. Cal. 2017). The court disagreed with Facebook's argument that 28 U.S.C. § 157(d) warranted permissive withdrawal. It stated, "the adversary proceeding at issue relates to the dischargeability of Vachani's debt to Facebook, which arose from the judgment in the [earlier district court] case." *Id*. Because the adversary proceeding was a core proceeding, "this fact weighs against withdrawing the reference." *Id*. The court also rejected Facebook's argument that, despite core status, "efficiency" weighed in favor of withdrawing the reference. It concluded, "[m]ost importantly, the Bankruptcy Court has greater expertise in bankruptcy law and its application to the instant case. … This expertise is particularly relevant because the instant case involves a 'core' bankruptcy proceeding that is 'properly within the Bankruptcy Court's competence.'" *Id.* (*citing In re Rosales*, 2013 WL 5962007, at *7 (N.D. Cal. Nov. 7, 2013)).

Similarly, in *One Longhorn Land I*, the plaintiff moved to withdraw the reference in an adversary proceeding alleging three nondischargeability claims. 529 B.R. at 759. In addition to arguments for mandatory withdrawal of the reference, the plaintiff also argued that the matter was a non-core proceeding because "the 'crux' of the adversary complaint involves state and federal securities claims and common law fraud, which do not depend on bankruptcy law." *Id*. 763. The court was not convinced, however, noting that "Congress has expressly defined as core 'determinations as to the dischargeability of particular debts.'" *Id.* (citing 28 U.S.C. § 157(b)(2)(I)). Further, "[b]ankruptcy courts have exclusive jurisdiction over nondischargeability actions brought pursuant to 11 U.S.C. § 523(a)(2), (4), (6) and (15)." *Id.* (citing *Rein*, 270 F.3d at 904). The court declined to grant permissive

withdrawal on these grounds.

The Adversary Proceeding is a core proceeding for all of these reasons. This factor weighs against permissive withdrawal.

### 2.   Other Considerations

That said, "[t]he determination of whether claims are core or non-core is not dispositive of a motion to withdraw a reference." *Hawaiian Airlines*, 355 B.R. at 223. In determining whether cause exists, courts should also "consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Security Farms*, 124 F.3d at 1008. Plaintiffs first argue that permissive withdrawal is appropriate because they "have a right to a jury trial on factual issues and causes of action asserted in their Adversary Complaint and preserved that right by filing their demand for a jury trial." (Doc. 2 at 12). However, as discussed above, Plaintiffs have not established that a jury trial is "required" in the Adversary Proceeding. *In re Cinematronics, Inc.,* 916 F.2d at 1451.

Plaintiffs offer various other arguments for granting permissive withdrawal. For example, they argue that the Court should grant permissive withdrawal because the claims in the Adversary Proceeding are "highly overlapping" with the District Court Case. (Doc. 2 at 13.) They claim that withdrawal of the reference would increase efficiency because "[t]rying the claims in different courts and through different trials threatens again to nearly completely duplicate much trial time, witness testimony, and argument." (*Id.*)  They also state that permitting two different proceedings would result in the federal courts being "doubly taxed." (*Id.*) Plaintiffs also argue that to withdraw the reference would eliminate the risk of "inconsistent or, in fact, wholly contradictory" liability determinations. (*Id*. at 14–15.) While the Court agrees that these are relevant considerations generally, *see Security Farms*, 124 F.3d at 1008, it does not agree that these factors warrant permissive withdrawal in this case.

First, as noted, the Adversary Complaint raises a § 523(a) nondischargeability claim. This type of claim is committed to the "exclusive jurisdiction" of the bankruptcy

1    court. *Rein*, 270 F.3d at 904. This "seriously undermines [Plaintiffs'] argument that
2    withdrawal of the reference is the most efficient course." *One Longhorn Land I, L.P.*, 529
3    B.R. at 764. Second, the arguments are not persuasive for procedural reasons. Plaintiffs
4    argue that if their motion is granted, the district court claims would first be "liquidated and
5    adjudicated." (Doc. 2 at 6.)  Then, the bankruptcy court "would become an appropriate
6    forum to resolve the bankruptcy issue of dischargeability of any debts established through
7    the District Court adjudication." (*Id.*) As Defendants state, "Plaintiffs are asking this Court
8    to withdraw the reference of the Adversary Proceeding, adjudicate the Tort Claims, and
9    then return the dischargeability issues to the bankruptcy court." (Doc. 4 at 4.)

10       This outcome would create procedural complications that do not warrant permissive
11   withdrawal. If the motion were granted and the reference withdrawn, then, as Defendants
12   note, "there would be no proceeding in bankruptcy court to return to." (*Id.* at 5.) Further,
13   Plaintiffs' district court claims will continue before Chief Judge Snow, but the
14   nondischargeability claim would be withdrawn to *another* District Judge (or, at minimum,
15   as another district court case). This is because, as Defendants note, Chief Judge Snow
16   would hear all of the claims "only if the two lawsuits were consolidated." (*Id.* at 6.)
17   Plaintiffs' motion "turns on the assumptions that, after withdrawal of the reference, this
18   Court will grant a yet-to-be-filed motion for discretionary transfer so that [Plaintiffs] can
19   seek to consolidate this proceeding" with the District Court Case. *One Longhorn*, 529 B.R.
20   at 764.[7] "Whatever the merits of these hypothetical procedural motions, they are not
21   presently before the Court." *Id.*

22       Lastly, Plaintiffs argue that to deny withdrawal of the reference would "foster
23   dangerous and wasteful gamesmanship" and "encourage forum shopping." (Doc. 2 at 16-
24   17.) The Court agrees that these are relevant considerations in reviewing a motion for
25   permissive withdrawal of the reference. *See Security Farms*, 124 F.3d at 1008. The Court
26   is not convinced that these are relevant concerns here. After Plaintiffs filed the District

---

27   [7] Plaintiffs' reply, for example, states, "[o]nce this Court orders the withdrawal of the
28   reference to adjudicate the Non-Dischargeable claims, the consolidation of those claims
     with the District Court Lawsuit is easily procured through a motion to consolidate under
     Rule 42(a), Fed. R. Civ. P." (Doc. 10 at 10.)

- 12 -

Court Case, they also filed the Adversary Proceeding—and now move to withdraw its reference from the bankruptcy court. The Court fails to see how denying the motion would encourage forum shopping, particularly given that, to the Court's knowledge, Defendants have made no effort to do so.

For all of these reasons, the Court finds that Plaintiffs have not shown cause to grant permissive withdrawal of the reference.

## IV.    CONCLUSION

The Court recognizes that this is a complex matter and that, as Plaintiffs have identified, the procedural posture creates litigation challenges. (*See, e.g.*, Doc. 2 at 13-14; Doc. 10 at 7-9.) Nonetheless, the limited issue before this Court is whether Plaintiffs have met their burden to withdraw the reference to the Adversary Proceeding. The Court finds that they have not. Litigants seeking withdrawal of the reference face a "high burden." *In re BBeautiful*, No. 2:16-AP-01506-ER, 2017 WL 932945, at *7 (Bankr. C.D. Cal. Mar. 8, 2017), report and recommendation adopted as modified. Plaintiffs have not met that burden in this case. They did not file the motion as "promptly as possible." *Security Farms*, 124 F.3d at 1007 n.3. And even if the motion were timely, Plaintiffs have not demonstrated that withdrawal is mandatory or that cause exists to grant permissive withdrawal. 28 U.S.C. § 157(d).

The Court notes that this ruling is without prejudice to Plaintiffs requesting that the Adversary Proceeding continue to be stayed pending the outcome of the District Court Case before Chief Judge Snow. A review of the Adversary Proceeding docket indicates that Judge Martin has previously stated that the bankruptcy court will not "rule on a 523(a)(6) action until it knows there is an underlying debt to which is attaches." (Adv. Proc. Doc. 20 at 2.) The Court defers to Judge Martin on the management of the Adversary Proceeding, noting that "it is well-settled" that bankruptcy courts "have broad discretion in the regular management of their own calendars." *In re Wirkkala*, No. ADV.05-01081-KAO, 2006 WL 6811038, at *4 (B.A.P. 9th Cir. July 12, 2006); *see also* 11 U.S.C. § 105(a) (bankruptcy court "may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title. No provision … shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

As to the motion before the Court, however, Plaintiffs have not met their burden to demonstrate that withdrawal of the reference is warranted.

Accordingly,

**IT IS ORDERED** that the Sweet Plaintiffs' Motion to Withdraw the Reference to Adversary Proceeding to Allow Claims to Proceed in District Court Case No. CV-17-00152-PHX-GMS (Doc. 2) is **denied**. The Clerk of the Court is directed to close this case.

Dated this 30th day of March, 2020.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge